IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:25cr46 |
| | ) | |
| TRE'KWANE CARLOS BELL | ) | |

**DEFENDANT'S MOTION TO SUPPRESS**
**WITH MEMORANDUM OF SUPPORT**

Tre'Kwane Bell fled when police tried to pull over the Lexus sedan he was driving, causing a high-speed chase. When the chase ended, police arrested Bell and handcuffed him. Several minutes later, police searched the Lexus top to bottom. They found marijuana, a loaded gun, and ammunition. But the police never obtained a warrant to search the Lexus. Under binding Fourth Circuit precedent, Bell's flight did not give police probable cause to search the car under the automobile exception. And no other exception to the warrant requirement applies. Accordingly, all fruit of the illegal search must be suppressed.

### I. Factual Summary

On April 9, 2025, Detective Beasley of the Hampton Police Department and Trooper Thompson of the Virginia State Police attempted to conduct a traffic stop on a white Lexus sedan based on allegedly failing to maintain its lane at the intersection of Todds Lane and Aberdeen Road in Hampton.[1] But the Lexus fled, successfully evading the police who failed to identify the driver.

The next day at about 3:04PM, Beasley and Thompson saw the Lexus again. The officers attempted to conduct a traffic stop based on the car's flight the night before. When the marked police car maneuvered to get into position—but before police activated their emergency lights—the Lexus crossed three lanes of traffic in an apparent attempt to evade the police. Then the Lexus sped off.

---

[1] This factual summary is drawn primarily from police reports and body camera footage.

With police in pursuit, the Lexus drove through traffic at a high rate of speed until a collision with another vehicle caused the Lexus to spin out. It came to rest next to a bush in front of a Burger King restaurant at 3405 W. Mercury Boulevard in Hampton.

Police approached the car with guns drawn. They instructed the driver to put his hands up. The driver complied with the officers' commands and was taken into custody. At 3:08PM, the driver was secured in handcuffs and escorted away from the Lexus to a waiting police cruiser where a search of his person was conducted. The driver was identified as Tre'Kwane Bell.

At 3:15PM, officers began searching the Lexus. They started with a closed backpack sitting on the front seat. Officers removed the backpack from the car, unzipped it, and searched inside. They recovered a loaded magazine from the side pocket and many small packets of marijuana in the main compartment of the backpack. Police also searched the trunk and found a loaded semiautomatic handgun with an extended magazine.

The Lexus was owned by Ashley Walker, Bell's significant other. At the end of the chase and before being taken into custody, Bell had called Walker and told her the location of her vehicle. Walker arrived on the scene of the accident at about 3:35PM. She approached the police, pointed to her car, and explained that it was hers. This was consistent with the state registration information accessible by police. Thompson later asked Hampton Police Corporal Chapman if the car was stolen and Chapman explained that it was not: "No, the girlfriend, registered owner is actually walking around here. […] No, so she showed up thinking she was going to be collecting the car. He was on the phone while we were at the window giving him commands. So she showed up here thinking she'd be able to get in the car and drive away. And we're like, 'nah.' And all she kept saying was 'he called me, he told me where the car was.'" Consistent with what she told police on that day, Walker has signed an affidavit affirming that Bell was driving the Lexus that day with her permission. Def. Ex. 1.

## II. <u>Law & Argument</u>

### a) Tre'Kwane Bell had a cognizable Fourth Amendment interest in the Lexus

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause … particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. But to challenge a search, a defendant must have a cognizable Fourth Amendment interest in the place searched.

Here, Tre'Kwane Bell was lawfully in possession and control of the Lexus searched by police on April 10, 2025. This is clear from what Corporal Chapman said on the scene based on his interactions with the car's registered owner, Ashley Walker. But to eliminate any doubt, we have also provided the affidavit, in which the car's registered owner affirms that Bell was driving the Lexus that day with her permission. Ex. 1.

Therefore, Tre'Kwane Bel had a reasonable expectation of privacy and the right to exclude others from the vehicle, in accordance with *Byrd v. United States*. 584 U.S. 395, 407 (2018). He also had at least the property rights of a bailee in the vehicle pursuant to *United States v. Jones*. 565 U.S. 400, 404 n.2 (2012). Under both the trespass test and the reasonable-expectation-of-privacy test, Bell had a cognizable Fourth Amendment interest in the car that was searched.

### b) Police violated the Fourth Amendment by searching the car without a warrant

Police conducted a warrantless search of the Lexus. Under the automobile exception to the warrant requirement, police can search a car if it is "is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam). Because the "government bears the burden of proof in justifying a warrantless search or seizure," *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013), the United States must prove up both elements of the automobile exception.

As to whether the car was readily moveable, we will see what the government proffers and respond accordingly. But that will not matter because there was clearly not probable cause to search the vehicle. To reach this conclusion, the Court need only consult one case because it is binding and indistinguishable. That case is the Fourth Circuit's published decision in *United States v. Davis*. 997 F.3d 191, 200 (4th Cir. 2021). The Fourth Circuit "address[ed] the warrantless search of Davis's vehicle." *Id.* at 200. These were the facts in *Davis*:

> [A]t around 2:45 pm, police officer Derek Richardson […] stopped a gray Honda Accord driven by defendant Howard Davis because he believed that the vehicle's windows were tinted too dark in violation of North Carolina law. Richardson approached Davis and explained that he had pulled Davis over because of the vehicle's window tint and obtained Davis's license and proof of insurance. A search of the relevant databases revealed that Davis's license was valid and that he had a history of felony drug charges and convictions.
>
> Two additional uniformed officers, David Veiling and Paul Boyd, arrived in a separate patrol car, parked behind Richardson's vehicle, and activated their car's lights. About three minutes into the stop, while Richardson talked with the other two officers, Davis put his hand out of his window and made a pointing gesture indicating that he was leaving. Davis then drove off without his license or proof of insurance, which were still in Richardson's possession.
>
> The officers gave chase. Davis raced through a residential neighborhood, at times reaching speeds of up to 50 miles per hour—double the neighborhood's speed limit. The pursuit continued until Davis reached a dead-end cul-de-sac, drove in between two houses and into someone's backyard, got out of his vehicle carrying a backpack, ran on foot into a swamp, and got stuck in knee-high water. Richardson, also on foot and roughly seven to ten yards behind Davis, drew his service weapon and ordered Davis to come out of the swamp. Davis complied by returning to dry land, dropping the backpack, and lying down on his stomach.
>
> Richardson patted Davis down and found a large amount of cash on Davis's person. Richardson then handcuffed Davis's hands behind his back and placed him under arrest for several traffic violations, including felony flee to elude.

*Id.* at 193-94.[2] "A search of Davis's vehicle revealed a digital scale, a bag containing bundles of cash,

---

[2]  We have omitted internal quotation marks, alterations, and citations in the citations in this brief, unless otherwise noted. *Cf. United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017) (doing same by footnote).

and other items." *Id.* at 194.[3]

The Fourth Circuit held that there was not probable cause to search Davis's vehicle and ordered evidence from the vehicle suppressed. *Id.* at 201. "Probable cause exists when the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.* In *Davis*, the Fourth Circuit noted that probable cause for the vehicle search rested on "Davis's flight, his subsequent arrest, and the cash discovered on his person." *Id.* These facts taken together, the Fourth Circuit held, "cannot support the warrantless search that occurred." *Id.*

The Fourth Circuit explained: "While Davis's flight coupled with the cash in his pockets may have given the officers an articulable suspicion that evidence of a crime could be located in the vehicle, it did not give them probable cause to circumvent the Fourth Amendment's warrant requirement and search the vehicle." *Id.* And "'the automobile exception requires that the police have probable cause (not just reasonable articulable suspicion) to search.'" *Id.* (quoting *United States v. Patiutka*, 804 F.3d 684, 691 (4th Cir. 2015)).

> Could a fleeing individual with cash in his pockets have evidence of some crime in his vehicle? Perhaps. But without more supporting facts available to tip the scales from "articulable suspicion" to "probable cause," the more accurate answer is, "[w]ell perhaps, but not probably."

*Id.* (quoting *United States v. Lyles*, 910 F.3d 787, 790-91, 794 (4th Cir. 2018)). The Fourth Circuit "h[e]ld that the district court erred when it concluded that the warrantless search of Davis's … vehicle [was] permissible," then "reverse[d] and remand[ed] for entry of an order granting the motion to suppress." *Id.* at 203.

---

[3] Police also searched Davis's backpack, but the Fourth Circuit held that the search of the backpack separately violated the Fourth Amendment; so, the Fourth Circuit held that evidence from the backpack could not contribute to probable cause for the search of the car. *Davis*, 997 F.3d at 201. Accordingly, we omit further reference to evidence from Davis's backpack here.

Here, the case for probable cause to search the Lexus was even weaker than in *Davis*. Both cases involved high speed flight from the police after which the vehicle came to rest off the road. In its *Davis* briefing, the United States described the flight in that case by noting that the vehicle chase lasted "approximately one and a half miles" went "through a residential neighborhood," and required the officer to chase Davis "down several residential streets, in between parked cars, and by several teenagers who were walking home from school," with Davis reaching "speeds in excess of 50 miles per hour in a 25mph zone"; the government explained that the "vehicle chase ultimately ended when Defendant turned onto a dead end street, drove through a yard between two houses, and almost drove over an embankment." Response Br. of U.S. 6 in *United States v. Davis*, No. 20-4035 (4th Cir. July 20, 2020). Thus, the element of flight—even high speed, reckless flight—is present in both cases.

In *Davis*, however, the government could point to *something* else. It pointed to the "large amount of cash" found on Davis's person. *Davis*, 997 F.3d at 194. Even in conjunction with high-speed flight, the cash was not enough to create probable cause to search Davis's car. But at least it was *something* other than flight. Here the government has only flight.

The government may argue that they have multiple instances of flight in this case—one on April 10 when Bell was arrested and one the night before when the same car ran. To start, the police did not know who was driving the Lexus when it fled the night before. But more importantly, this additional instance of flight does not change the basic principle that flight alone does not create probable cause to believe that the car contains contraband or evidence of a crime. We can muse about the relevance of the alleged instance of flight the night before. Perhaps flight the next day suggests that the driver of the Lexus was not fleeing because the car contained contraband because such contraband could have been removed from the Lexus after it successfully evaded police the night before. This reasoning might suggest that the motivation for the Lexus's flight had more to do with the driver than the contents of the vehicle—perhaps a driver with a suspended license or fear of an

outstanding warrant. But really, what it suggests, is not much at all. As the Supreme Court recognized in *Illinois v. Wardlow*, it is "undoubtedly true" that "there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity." 528 U.S. 119, 125 (2000). When probable cause is the standard, that makes all the difference under *Davis. See United States v. Seabreeze*, No. 24cr22, 2024 WL 2832795, at *6 n.2 (E.D. Pa. June 4, 2024) (citing *Davis* for the proposition that "the Fourth Circuit has squarely de-emphasized the importance of fleeing on a probable cause, versus reasonable articulable suspicion, analysis").

Because police lacked probable cause to search the Lexus, the automobile exception to the warrant requirement does not apply. The search violated the Fourth Amendment, and its fruits must be suppressed.

### c) Everything seized from the car and all data from Bell's phone must be excluded as fruit of the vehicle search

As to some evidence, the fruits question is easy. The vehicle search directly revealed marijuana, a magazine containing ammunition, and a firearm with a large-capacity magazine loaded with ammunition in the trunk. All that must be suppressed if the warrantless car search violated the Fourth Amendment.

But the Court also must suppress evidence from Bell's smartphone. The phone was not discovered through the search of the car. It was in Bell's hand when he was removed from the vehicle. Still, data from the phone must be suppressed because police used the illegal car search to obtain the warrant to search Bell's phone.

It is axiomatic that evidence illegally obtained cannot be used to secure a search warrant. When an initial search is unconstitutional, evidence obtained pursuant to a subsequent warrant must be suppressed unless "sufficient untainted evidence was presented in the warrant affidavit to establish probable cause," rendering the warrant valid. *United States v. Karo*, 468 U.S. 705, 719 (1984); *see also United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011); *United States v. Gillenwaters*, 890 F.2d 679, 682

(4th Cir. 1989). In these circumstances, the court should excise from the warrant application all unconstitutionally-obtained information and determine whether probable cause still existed to support the warrant. *Gillenwaters*, 890 F.2d at 682.

The affidavit in support of the warrant to search Bell's iPhone is attached. Ex. 2, at 5. We've marked in red highlighting those portions of the affidavit that should be excised from the affidavit under *Gillenwaters*. The thesis of the warrant affidavit is that people "involved in the manufacturing, purchasing and or [sic] distribution of illegal narcotics" use cell phones to carry out that activity. Ex. 2, at 5. But the only reason to think Bell was involved with "illegal narcotics" was the bag of marijuana found through the search of the Lexus. In other words, every fact supporting the affiant's theory of probable cause came from the illegal search of the Lexus. If the vehicle search violated the Fourth Amendment, the data extracted from Bell's iPhone must also be suppressed as fruit of that search.

\* \* \*

Perhaps because Tre'Kwane Bell's crime was so obvious, police fell victim to an intuition that the legitimacy of a vehicle search necessarily followed. This man just engaged in a high-speed chase from police—of course, we can search his car. But that intuition would have been misleading. There was probable cause to believe that Bell committed a crime by fleeing from the police. But, under *Davis*, there was not probable cause to believe that the Lexus contained contraband or evidence of a crime. When the police searched it anyway, they violated the Fourth Amendment. We respectfully ask the Court to grant this motion to suppress on that basis.

Respectfully submitted,

TRE'KWANE CARLOS BELL

By:_____/s/_____

Andrew W. Grindrod
Virginia State Bar No. 83943
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org